**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

**TIMOTHY A. VAIL**,

                            Plaintiff,

- v -                                                Civ. No. 9:12-CV-234
                                                           (GTS/RFT)

**JOSEPH SMITH**, *Superintendent, Shawangunk Correctional Facility;* **LOUIS PINGOTTI,** *Captain, Shawangunk Correctional Facility*; **PETER PRESTON**, *Sergeant*; *Shawangunk Correctional Facility*; **MAUREEN BOLL**, *Deputy Commissioner and Counsel, Department of Corrections and Community Supervision*,

                            Defendants.

**APPEARANCES:**                                   **OF COUNSEL:**

**TIMOTHY A. VAIL**
89-C-1513
Plaintiff, *Pro Se*
Shawangunk Correctional Facility
P.O. Box 700
Walkill, NY 12589

**HON. ERIC T. SCHNEIDERMAN**              **ADELE M. TAYLOR-SCOTT, ESQ.**
Attorney General of the State of New York      Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

Timothy Vail, a New York State prison inmate proceeding *pro se* and *in forma pauperis*, commenced this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that a prison policy restricting the number of envelopes that a prisoner may possess at any one time infringes upon his constitutional rights to the free flow of outgoing mail and freedom of speech, under the First and

Fourteenth Amendments. *See* Dkt. No. 1, Compl. Defendants move for dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), on the basis that, *inter alia,* Plaintiff has failed to state a cause of action, and in the alternative that they are entitled to qualified immunity. Dkt. No. 14. Plaintiff opposes the Motion. Dkt. No. 16. For the reasons that follow it is recommended that Defendants' Motion to Dismiss be **DENIED**.

## I. BACKGROUND

What follows is a summary of the facts alleged in Plaintiff's Complaint, which must be accepted as true for the purposes of addressing Defendants' Motion to Dismiss. *See infra* Part II. A.

On May 19, 2010, Plaintiff was transferred from the Clinton Correctional Facility to the Special Housing Unit (SHU) at the Shawangunk Correctional Facility. *See* Compl. at ¶¶ 6(1) & 6(9). Pursuant to Shawangunk's SHU policy, upon arrival, Plaintiff was provided with five state issued envelopes, ten sheets of paper, and a pen. *Id.* at ¶ 6(2). Upon receiving his initial disbursement, Plaintiff requested additional envelopes so that he could notify "everyone" that he had been transferred to a new facility, and write "memos to various sources 'in-house'." *Id.* at ¶ 6(3). Plaintiff was informed that pursuant to Shawangunk policies, he was only permitted to have five envelopes at any one time, but that for each envelope he used to mail an outgoing letter he could receive an additional envelope on a one-for-one exchange basis. *See Id.* at ¶ 6(4); Dkt. No. 1-1 at p. 11,[1] Policy and Procedure #2.401, Shawangunk SHU/PC/IPC GUIDELINES and REGULATIONS §(2)(e) (hereinafter "policy" or "five envelope policy"). Additionally, Plaintiff was unable to

---

[1] Plaintiff appends several Exhibits to his Complaint. Dkt. No. 1-1. However because he did not uniformly label each exhibit references to the documents attached to the Complaint shall be to the page numbers automatically assigned by the Court's Case Management Electronic Case Files System.

purchase "regular size envelopes" through the facility's commissary. Compl. at ¶ 6(6).

On or about October 14, 2010, after several unsuccessful attempts to solicit additional envelopes from Shawangunk staff, and consequently having been forestalled from mailing out more than five pieces of mail at one time, Plaintiff filed a grievance. *Id.* at ¶ 6(8); Dkt. No. 1-1 at p. 3, Pl.'s Grievance dated Oct. 12, 2010.[2] In his grievance, Plaintiff stated that the five envelope policy was tantamount to censorship and an affront to his First Amendment rights. Compl. at ¶ 6(9). He demanded that he be provided with as many envelopes as he required, or alternatively, that additional envelopes be made available for purchase at the commissary. *Id.* Plaintiff's grievance was consolidated with other similar inmate grievances and, on October 26, 2010, the Inmate Grievance Review Committee ruled in favor of the inmates and determined that limits should not be placed on how many envelopes inmates can possess and purchase. *Id.* at ¶ 6(14). To ensure proper exhaustion of the issue, the inmates appealed the decision to Superintendent Smith, who, on November 1, 2010, denied the grievance. *Id.* at ¶¶ 6(15) & 6(16). Plaintiff appealed that decision to the Central Office Review Committee (C.O.R.C.), who, On January 12, 2011, unanimously accepted Plaintiff's grievance in part. *Id.* at 6(17) & 6(19). According to the decision, C.O.R.C. advised staff that additional envelopes *may* be issued if an inmate can demonstrate need, and that it *remained within the discretion* of the facility's administration to determine what items would be made available for sale via the commissary. Dkt. No. 1-1 at p. 19 (emphasis added).

For approximately one or two months following C.O.R.C.'s decision, Plaintiff was allowed to acquire more than five envelopes at one time without incident. Compl. at ¶ 6(20). However, shortly thereafter Defendant Pingotti issued a memo reinstating the old five envelope policy. *Id.*

---

[2] Plaintiff also wrote letters to Defendants Superintendent Smith and Deputy Commissioner Boll regarding these same complaints; those letters were not responded to. Compl. at ¶ 6(10), 6(11), & 6(18).

In response, Plaintiff wrote multiple letters to Defendants Smith, Preston, and Boll, detailing his issues regarding the envelope policy. *Id.* at ¶¶ 6(21)–(25). On September 9, 2011, Plaintiff wrote a letter to Defendant Preston concerning the reinstated policy. *Id.* at ¶ 21. Defendant Preston made a personal visit to Plaintiff's cell and told Plaintiff that although he personally had no problem with providing more than five envelopes to Plaintiff, he was unable to do so because, in addition to the memo, he had received a direct order from Defendant Pingotti to follow the five envelope policy. *Id.* at ¶¶ 21-22. After sending several additional followup letters, Plaintiff finally received separate replies from Defendants Pingotti and Smith reiterating that the five envelope policy would continue to be enforced. *Id.* at ¶¶ 6(26) & 6(27).

Between November 2010 and January 2012, Plaintiff was unable to send out more than five pieces of mail at one time on more than forty-one separate occasions. Dkt. No. 1-1 at p. 35.

## II. DISCUSSION

### A. Standard of Review

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). The trial court's function "is merely to assess the legal feasability of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (*overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984)).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may

take judicial notice." *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)). Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (emphasis in original) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 n. 6 (1963); *see also Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. at 697 (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc.*

*v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 440 U.S. at 555). Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. at 679-80.

With the standard with which we review motions to dismiss in tow, we consider the plausibility of Plaintiff's Complaint.

### B. First Amendment

It is clear that a prisoner's First Amendment rights are implicated when the "free flow of incoming and outgoing mail" is hindered. *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). However, the right to the free flow of mail does not provide for the unfettered free flow of mail, but rather, reasonable restrictions on the free flow of mail are allowed, provided the restrictions "further[] one or more of the substantial governmental interests of security, order, and rehabilitation . . . [and are] no greater than is necessary or essential to the protection of the particular governmental interest involved." *Id*. (quoting *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986)). The Supreme Court has enumerated various factors for courts to consider when ruling upon the reasonableness of a prison policy which allegedly impedes or interferes with a prisoner's constitutional rights:

> [1] there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it [citation omitted][;]

> [2] whether there are alternative means of exercising the right that remain open to prison inmates[;]
> [3] the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally[; and]
> [4] the absence of ready alternatives is evidence of the reasonableness of a prison regulation.

*Turner v. Safley*, 482 U.S. 78, 89-91 (1987).

When balancing these competing interests, courts generally afford greater protection to legal mail versus non-legal mail; similarly, outgoing mail has more protection than incoming mail. *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989); *Davis v. Goord*, 320 F.3d at 351. Outgoing mail receives greater protection than incoming mail because outgoing mail implicates prison security concerns of a "categorically lesser magnitude" than incoming mail. *Cancel v. Goord*, 2001 WL 303713 at *5 (S.D.N.Y. Mar. 29, 2001) (citing *Thornburgh v. Abbott*, 490 U.S. at 413 and *Davidson v. Scully*, 694 F.2d 50, 53 (2d Cir.1982)).

To state a First Amendment claim based upon interference with legal mail, the prisoner must allege that prison officials "regularly and unjustifiably" interfered with the prisoner's mail. *Davis v. Goord*, 320 F.3d at 351. With regard to non-legal mail interference, the Second Circuit has held that the prisoner must allege specific incidents wherein the prisoner's "ability to communicate with outsiders" was "significantly impaired." *Davidson v. Mann*, 129 F.3d 700, 701–02 (2d. Cir. 1997).

Here, Plaintiff's chief complaint is that, on forty-one separate occasions his ability to send any outgoing mail was impeded due to the prison's five envelope policy.[3] At this stage Plaintiff has

---

[3] After reviewing Plaintiff's Complaint and the papers supporting and opposing the pending Motion to Dismiss, the Court is satisfied that Plaintiff had no intention in bringing a claim for denial of access to courts. *See* Dkt. No. 16, Pl.'s Mem. of Law at pp. 8-9 (responding to the fourth point raised in Defendants' Memorandum of Law by conceding that he had no intention to bring such a claim). However, in making this concession, Plaintiff states: "Nowhere in the Plaintiff's complaint does he make reference to any concerns with outgoing or incoming legal mail." *Id.* at p. 9. Technically, this is an accurate statement in light of the fact that Plaintiff does not differentiate between the type of mail affected by this policy and instead consistently says the policy affects his ability to send any mail. The Court is unsure whether by his statement in his Opposition papers he meant to limit his First Amendment mail claims to only non-legal, (continued...)

provided sufficient facts to find that his right to the free flow of outgoing mail, legal or otherwise, has been impeded in some way and that his ability to communicate with outsiders was significantly impaired. *See Davis v. Goord*, 320 F.3d at 351; *Davidson v. Mann*, 125 F.3d at 701.

Granted, what Plaintiff has characterized as censorship – his inability to mail as many letters as he may wish, at any time he may wish – may very well amount to nothing more than a series of insignificant, one-day delays in his ability to send outgoing mail. Likewise, upon a fuller record, a court may determine that the limits imposed by the policy were reasonably related to a legitimate penological interest. See *Davis v. Goord*, 320 F.3d 346, 351; *see also Turner v. Safley*, 482 U.S. at 89–9. However, at this stage in the proceedings, it would be improper to assess the viability of any penological interest as we are bound to review solely the legal plausibility of the Complaint on its face.

Therefore, because the facts as alleged by Plaintiff are sufficient to support plausible inferences that the five-envelope policy at Shawangunk's SHU implicates Plaintiff's right to free speech, and significantly interferes with Plaintiff's right to the free flow of outgoing mail, we recommend that Defendants' Motion to Dismiss be **DENIED.**

## C. Qualified Immunity

The doctrine of qualified immunity shields public officials from suit for conduct undertaken in the course of their duties if it "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Firzgerald*, 457 U.S. 800, 818 (1982); *Eng v. Coughlin*, 858 F.2d 889, 895 (2d Cir. 1988). The doctrine protects public officials from

---

[3](...continued)
outgoing mail. In an abundance of caution, we examine the claims as set forth in the Complaint, though we note that this issue will most likely be clarified through the discovery process.

'personally facing the risk of incurring ruinous liability in the form of money damages, which would deter qualified people from public service." *Eng v. Coughlin*, 858 F.2d at 895.

Qualified immunity is an affirmative defense that must be pleaded by the official claiming it. *Satchell v. Dilworth*, 745 F.2d 781, 784 (2d Cir. 1984) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982)). The only pleading filed in the present case thus far is the Complaint. Defendants have not raised this affirmative defense in a responsive pleading as set forth in FED. R. CIV. P. 8(c), but rather in their memorandum of law in support of their Motion to Dismiss. Generally, however, "the defense of qualified immunity cannot support the grant of a . . . 12(b)(6) motion for failure to state a claim upon which relief can be granted." *Green v. Maraio*, 722 F.2d 1013, 1018 (2d Cir. 1983); *see also McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004) (quoting *Green*). An exception to this general rule exists where the complaint itself sets up, on its face, the qualified immunity defense; in such an occasion, dismissal for failure to state a claim would be appropriate. *Roniger v. McCall*, 22 F. Supp. 2d 156, 162 (S.D.N.Y. 1998) (citing *Green v. Maraio*, 722 F.2d at 1019); *see also McKenna v. Wright*, 386 F.3d at 435.

The Second Circuit has further held that qualified immunity "turns on factual questions that cannot be resolved at [the motion to dismiss] stage of proceedings." *Taylor v. Vermont Dep't of Educ.*, 313 F.3d 768, 793 (2d Cir. 2002). For these reasons, any adjudication as to the applicability of the qualified immunity affirmative defense would be premature since "[r]esolution of qualified immunity depends on the determination of certain factual questions that cannot be answered at this stage of the litigation." *Denton v. McKee*, 332 F. Supp. 2d 659, 666 (S.D.N.Y. 2004).

A prisoner's constitutional right to the free flow of incoming and outgoing mail is clearly established. *See Davis v. Goord*, 320 F.3d at 351. And, as noted above, Plaintiff has stated

sufficient facts to make out a violation of his right to the free flow of outgoing mail. Until a more fully developed record has been compiled, adjudging the reasonableness of Defendants' behavior in this case would simply be premature. *See Denton v. McKee*, 332 F. Supp. 2d at 666.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion to Dismiss (Dkt. No. 14) be **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: January 17, 2013

Albany, New York

Randolph F. Treece
U.S. Magistrate Judge