UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TIMOTHY A. VAIL

                         Plaintiff,

v.                                                  9:12-CV-0234
                                                 (GTS/RFT)

JOSEPH T. SMITH, Superintendent, Shawangunk C.F.;
LOUIS PINGOTTI, Captain, Shawangunk C.F.;
PETER PRESTON, Sergeant, Shawangunk C.F.; and
MAUREEN BOLL, Deputy Comm'r and Counsel,
NY DOCCS,

                         Defendants.
_____

APPEARANCES:                                         OF COUNSEL:

TIMOTHY A. VAIL, 89-C-1513
  Plaintiff, *Pro Se*
Shawangunk Correctional Facility
P.O. Box 700
Wallkill, New York 12584

HON. ERIC T. SCHNEIDERMAN                   ADELE M. TAYLOR-SCOTT, ESQ.
Attorney General for the State of New York        Assistant Attorney General
  Counsel for Defendant
The Capitol
Albany, New York 12224

GLENN T. SUDDABY, United States District Judge

## MEMORANDUM-DECISION and ORDER

      Currently before the Court, in this *pro se* prisoner civil rights action filed by Timothy A.

Vail ("Plaintiff") against the four above-captioned New York State correctional employees

("Defendants") pursuant to 42 U.S.C. § 1983, are Defendants' motion to dismiss Plaintiff's

Complaint for failure to state a claim (Dkt. No. 14), United States Magistrate Judge Randolph F.

Treece's Report-Recommendation recommending that Defendants' motion be denied (Dkt. No.

17), and Defendants' objection to the Report-Recommendation (Dkt. No. 18). For the reasons set forth below, Defendants' Objections are rejected, Magistrate Judge Treece's Report-Recommendation is accepted and adopted in its entirety, and Defendants' motion is denied.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Complaint

Generally, liberally construed, Plaintiff's Complaint alleges that a correctional facility policy restricting the number of free state-issued regular-sized envelopes that a prisoner may possess at any one time to five (to be replenished on a on-for-one basis a day after mailing) infringes upon his constitutional rights to the free flow of outgoing mail and freedom of speech, under the First and Fourteenth Amendments. (Dkt. No. 1.) Because the parties have (in their memoranda of law) demonstrated an accurate understanding of Plaintiff's claims and supporting factual allegations, familiarity with the particular nature of those claims and factual allegations is assumed in this Decision and Order, which is intended primarily for the review of the parties.[1]

### B. Defendants' Motion to Dismiss

Generally, in their motion to dismiss, Defendants assert the following five arguments: (1) Plaintiff has failed to allege facts plausibly suggesting a "free flow of mail" claim under the First Amendment, in part because the Second Circuit's holding that indigent prisoners do not have a constitutional right to unlimited free postage for non-legal mail (*see Johnson v. Goord*, 445 F.3d 532, 534 [2d Cir. 2006]) should be applied to state-issued envelopes; (2) Plaintiff has failed to allege facts plausibly suggesting a separate "free speech" claim under the First Amendment; (3) to the extent that Plaintiff's Complaint may be liberally construed as attempting to assert an

---

[1] The Court would add only that Magistrate Judge Treece summarized those factual allegations in his Report-Recommendation (Dkt. No. 17, at Part I), and Defendants did not specifically challenge the accuracy of that summary in their Objections (Dkt. No. 18).

2

"access to courts" claim under the First Amendment, Plaintiff has failed to allege facts plausibly suggesting such a claim; (4) to the extent that Plaintiff's Complaint may be liberally construed as attempting to assert a "conditions of confinement" claim under the Eighth Amendment, Plaintiff has failed to allege facts plausibly suggesting such a claim; and (5) based on Plaintiff's factual allegations, Defendants are protected from liability as a matter of law by the doctrine of qualified immunity. (Dkt. No. 14, Attach. 2 at Points II through VI.)

C. **Magistrate Judge Treece's Report-Recommendation**

Generally, in his Report-Recommendation, Magistrate Judge Treece found as follows: (1) while Plaintiff acknowledges in his opposition memorandum of law that "[n]owhere in [his] complaint does he make reference to any concerns with outgoing or incoming legal mail," he consistently alleges that the policy affects his ability to send *any* mail, thus plausibly suggesting that his "free flow of mail" claim, when construed with special liberality, does encompass his flow of legal mail; (2) while Defendants may be able to show on summary judgment that their mail policy was reasonably related to a legitimate penological interest and/or that the impediments caused by that policy were insignificant, at this point in the proceeding Plaintiff has stated a "free flow of mail" and "free speech" claim under the First and Fourteenth Amendments, because (a) with regard to his legal mail, he has alleged facts plausibly suggesting that Defendants regularly and unjustifiably interfered with that legal mail, and (b) with regard to his non-legal mail, he has alleged facts plausibly suggesting that, on specific instances, Defendants significantly impaired Plaintiff's ability to communicate with outsiders; (3) the right claimed by Plaintiff was clearly established during the time in question for purposes of a qualified-immunity defense and, while Defendants may be able to show on summary judgment that their behavior was objectively reasonable for purposes of the second prong of that defense, they may obtain

3

dismissal on that ground pursuant to Fed. R. Civ. P. 12(b)(6) only when Plaintiff has pled himself out of court on that issue, which has not happened here; and (4) Plaintiff has not attempted to assert an "access to courts" claim under the First Amendment. (Dkt. No. 17, at Parts II.B. and II.C.)

### D. Defendants' Objections

Generally, in their Objections, Defendants assert the following two arguments: (1) Plaintiff has failed to state a "free flow of mail" claim, because (a) he himself concedes that he is *not* raising concerns about his flow of legal mail, (b) he has failed to allege facts plausibly suggesting a *significantly* impairment of his flow of non-legal mail, only a minor such impairment, and (c) again, the Second Circuit's holding that indigent prisoners do not have a constitutional right to unlimited free postage for non-legal mail should be applied to state-issued envelopes; and (2) the right claimed by Plaintiff was not clearly established during the time in question for purposes of a qualified-immunity defense. (Dkt. No. 18, at Points I and II.)

### E. Plaintiff's Response to Defendants' Objections

Defendants Objections were dated and mailed to Plaintiff on January 25, 2013. (Dkt. No. 18, & Attach. 1.) Plaintiff's response to Defendants' Objections was last dated (and thus deemed "filed," pursuant to the "Prison Mailbox Rule") and mailed to Defendants on February 21, 2013. (Dkt. No. 19, at 8.) However, the filing and service of Plaintiff response was due on February 11, 2013–14 calendar days after Plaintiff was served with a copy of the Objections (pursuant to Fed. R. Civ. P. 72[c] and N.D.N.Y. L.R. 72.1[c]) plus three calendar days due to the fact that the Objections were served by regular mail (pursuant to Fed. R. Civ. P. 6[d]). As a result, Plaintiff's response is untimely and will not be considered by the Court. The Court would add only that consideration of Plaintiff's response would not alter the outcome of this Decision and Order.

(*See, e.g.,* Dkt. No. 19, at 6 [indicating that Plaintiff is indeed complaining about, inter alia, his inability to mail out legal correspondence].)

## II. APPLICABLE LEGAL STANDARDS

### A. Standard of Review Governing a Report-Recommendation

When a *specific* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(c).[2] When performing such a *de novo* review, "[t]he judge may . . . receive further evidence. . . ." 28 U.S.C. § 636(b)(1). However, a district court will ordinarily refuse to consider evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance.[3]

---

[2] *See also Mario v. P&C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

[3] *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40, n.3 (2d Cir. 1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *cf. U. S. v. Raddatz*, 447 U.S. 667, 676, n.3 (1980) ("We conclude that to construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's

When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b)(2),(3); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition.[4] Similarly, when an objection merely reiterates the *same arguments* made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review.[5] Finally, when *no* objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id*.[6]

---

credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts."); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition ("The term 'de novo' does not indicate that a secondary evidentiary hearing is required.").

[4] *See also Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *2-3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion*, 175 F.3d 1007 (2d Cir. 1999).

[5] *See Mario*, 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed. R. Civ. P. 72(b) or Local Civil Rule 72.3(a)(3)."); *Camardo v. Gen. Motors Hourly-Rate Emp. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992) (explaining that court need not consider objections that merely constitute a "rehashing" of the same arguments and positions taken in original papers submitted to the magistrate judge); *accord, Praileau v. Cnty. of Schenectady*, 09-CV-0924, 2010 WL 3761902, at *1, n.1 (N.D.N.Y. Sept. 20, 2010) (McAvoy, J.); *Hickman ex rel. M.A.H. v. Astrue*, 07-CV-1077, 2010 WL 2985968, at *3 & n.3 (N.D.N.Y. July 27, 2010) (Mordue, C.J.); *Almonte v. N.Y.S. Div. of Parole*, 04-CV-0484, 2006 WL 149049, at *4 (N.D.N.Y. Jan. 18, 2006) (Sharpe, J.).

[6] *See also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks and citations omitted).

After conducing the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

**B.      Standard Governing a Motion to Dismiss for Failure to State a Claim**

Because Magistrate Judge Treece thoroughly recited the legal standard governing a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 17 at Part II.A.), and Defendants have not specifically challenged that recitation in their Objections (Dkt. No. 18), the Court incorporates by reference that recitation in this Decision and Order, which (again) is intended primarily for the review of the parties.

**III.    ANALYSIS**

After carefully reviewing all of the papers in this action, including Magistrate Judge Treece's Report-Recommendation, and Defendants' Objections thereto, the Court rejects Defendants' Objections, and concludes that the Report-Recommendation is correct in all respects. Magistrate Judge Treece employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Court accepts and adopts the Report-Recommendation for the reasons stated therein. The Court would add the following four points.

First, with regard to Defendants' argument that Plaintiff himself concedes that he is *not* raising concerns about his flow of legal mail, the Court agrees with Magistrate Judge Treece that Plaintiff's concession is ambiguous when considered in context with Plaintiff's other allegations. For example, the Court is persuaded by the following facts: (1) Plaintiff's exhibits contain a letter of complaint stating, "I have a right . . . to have meaningful access to [the] courts. By not allowing me to mail more than 5 envelopes per day is [sic] interfering with that right" (Dkt. No. 1, Attach. 1, at 7); (2) his exhibits contain a letter of complaint stating, "It is not

7

uncommon to have more than 5 pieces of mail being sent between regular correspondence, legal correspondence, and inter-department correspondence . . ." (Dkt. No. 1, Attach. 1, at 7); (3) his exhibits contain a letter of complaint requesting access to "legal size envelopes" (Dkt. No. 1, Attach. 1, at 23, 26); and (4) Plaintiff alleges that, during the time in which his envelopes were limited, he wrote letters of complaints to Defendants, as well as a grievance and an appeal (*see generally* Dkt. No. 1; Dkt. No. 1, Attach. 1). The Court is also mindful of the fact that, in this Circuit, the claims of a *pro se* prisoner civil rights litigant are not limited to those he articulates in his complaint but those that can be imagined by the court based on the factual allegations in that complaint.[7] While the discovery process might ultimately clarify this issue, it is sufficiently obscure at this point to keep a legal-mail claim in this case.

Second, having said that, the Court expresses no opinion as to whether any such legal-mail claim would survive a motion for summary judgment. The Court notes that, based on Plaintiff's own allegations, it appears that (1) upon his admission to SHU, he was given two free state-issued 9-by-12-inch manilla envelopes to be used for legal mail purposes, (2) pursuant to the facility policy at issue in this case, those two envelopes could be replenished on a one-for-one basis a day after mailing, (3) the facility's commissary offered for sale to inmates in SHU a virtually unlimited number of 9-by-12-inch manilla envelopes, the mailing of which was not restricted by any facility policy, and (4) none of the mail that Plaintiff attempted to mail out during the 41 days he specifies (in an attachment to his Complaint) was legal mail. (*See generally* Dkt. No. 1.)

---

[7] *See Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir.2005) ("We leave it for the district court to determine what other claims, if any, Phillips has raised. In so doing, the court's imagination should be limited only by Phillips' factual allegations, not by the legal claims set out in his pleadings.").

8

Third, with regard to Defendants' argument that Plaintiff has failed to allege facts plausibly suggesting a *significant* impairment of his flow of non-legal mail, the Court disagrees. Although the issue is admittedly a close call, the Court is persuaded by the following facts: (1) not only does Plaintiff allege that he wanted to write "everyone" (Dkt. No. 1, at 8), he specifically identifies *at least* 41 dates on which he was denied the ability to send more than five state-issued regular-sized envelopes (Dkt. No. 1, Attach. 1, at 35);[8] (2) based on Plaintiff's allegations, it is plausible that, on many of those dates, he was denied the ability to send more than one state-issued regular-sized envelope (above the limit of five);[9] (3) Plaintiff specifically alleges that he wanted to "communicate with the outside world due to [his] solitary conditions" in a Special Housing Unit (Dkt. No. 1, Attach. 1, at 3); (4) Plaintiff specifically alleges that there was no other way to communicate with the outside world due to (a) the lack of ability to buy other envelopes through the prison's commissary and (b) the lack of "phone privileges" he had due to his solitary confinement (Dkt. No. 1, Attach. 1, at 5, 17, 23, 26); and (5) Plaintiff specifically alleges that the delays were sometimes two days in length (over weekends) or three days in length (over long weekends) (Dkt. No. 1, Attach. 1, at 7). Again, while the discovery process might reveal other facts, the facts alleged in the Complaint are sufficient to withstand dismissal of this non-legal-mail claim under Fed. R. Civ. P. 12(b)(6).

Fourth, having said that, again, the Court expresses no opinion as to whether Plaintiff's non-legal-mail claim would survive a motion for summary judgment. The Court notes that it is

---

[8] The Court says "at least" because Plaintiff also alleges facts plausibly suggesting that the denials occurred (1) on October 14, 2010, and (2) numerous times between May 19, 2010, and October 14, 2010. (Dkt. No. 1, at 9; Dkt. No. 1, Attach. 1, at 5.)

[9] For example, Plaintiff alleges that he was denied the ability to send two of seven pieces of mail on October 12, 2010 (Dkt. No. 1, Attach. 1, at 5), and four of nine pieces of mail on December 29, 2010 (Dkt. No. 1, Attach. 1, at 17, 35).

9

conceivable that (1) the virtually unlimited number of 9-by-12-inch manilla envelopes for sale to inmates in SHU through the facility's commissary could have been used (without violating any facility policy) for sending as much *non-legal* mail as desirable each day (reducing, if not eliminating, Plaintiff's purported need for an unlimited supply of free state-issued regular-size envelopes), and (2) the facility policy at issue in this action could be supported by an interest in placing a reasonable cap on the cost of giving free envelopes to inmates in SHU while operating under an extremely tight budget (which appears to be permissible under *Johnson v. Goord*, 445 F.3d 532, 534 [2d Cir. 2006]).

In addition, the Court notes that Plaintiff's own allegations appear to indicate the limited (if not altogether lack of) personal involvement of Defendant Boll (who merely received a letter and never responded to it, *see* Dkt. No. 1, at ¶ 6[24]) and Defendant Smith (who merely relied on the investigation and response of a subordinate, *see* Dkt. No. 1, at ¶ 6[27] & Ex. N) in the constitutional violations alleged.

Finally, it is conceivable that Defendants would be protected from liability as a matter of law by the doctrine of qualified immunity. Granted, the Second Circuit explained, in 2003, that "a prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). As a result, judges of this District have agreed that "the right of prison inmates to the free flow of incoming and outgoing mail absent interference for the purpose of preventing illegal activities or otherwise reasonably related to legitimate penological concerns . . . was clearly established [as of at least April 2011]." *Greene v. Napoli*, 11-CV-0792, 2012 WL 4107595, at *6 (N.D.N.Y. Aug. 2, 2012) (Peebles, M.J.) (concluding that defendants were entitled to summary judgment based on qualified immunity where plaintiff was involved in illegal activities), *adopted by* 2012 WL 4107722 (N.D.N.Y. Sept. 19, 2012) (Mordue, J.).

However, the Second Circuit has instructed that for purposes of the qualified immunity inquiry, the constitutional right at stake must be defined with "reasonable specificity." *Redd v. Wright*, 597 F.3d 532, 536 (2d Cir. 2010) ("[T]he Supreme Court [in *Wilson v. Layne*] has expressly cautioned against framing the constitutional right at too broad a level of generality . . . . And we have interposed a 'reasonable specificity' requirement on defining the contours of a constitutional right for qualified immunity purposes.") (citation omitted).[10] Notably, in *Redd v. Wright*, the Second Circuit rejected a prisoner's broad definition of his First Amendment right for purposes of the qualified-immunity defense, where that definition did not mention the prison policy he was challenging. *See Redd*, 597 F.3d at 536 ("Redd's characterization of his right [under the First Amendment RLUIPA as the right 'not to be subjected to punishment or more burdensome confinement as a consequence of his religious beliefs'] is not 'reasonably specific' because it fails to account for the 1996 Policy in particular [which required that inmates who refused tuberculosis testing be placed in keeplock confinement]. We agree with the defendants that the right at issue here is Redd's right under the First Amendment and RLUIPA to a religious exemption from the 1996 Policy.").

Here, based on the current briefing of the parties, the Court can find no law, existing before the time in question, defining the First Amendment right to the free flow of mail in prison *in the context of the sort of facility policy instituted in this action*. Moreover, setting aside the issue of reasonable specificity, it is difficult to imagine how reasonably competent correctional officers could have disagreed as to the legality of the actions of Defendant Preston, who is alleged to have been simply following a direct order with no discretion to do otherwise.

---

[10] The Second Circuit has explained has the right is defined with reasonable specificity where "the unlawfulness of the alleged action [would have been] apparent to a reasonable official in the light of pre-existing law." *Nagle v. Marron*, 663 F.3d 100, 114 (2d Cir. 2011) (internal quotation marks omitted).

However, again, this issue appears more appropriately addressed during a motion for summary judgment, under the circumstances.

For all of these reasons, the Court rejects Defendants' Objections, adopts Magistrate Judge Treece's Report-Recommendation, and denies Defendants' motion to dismiss. This case will proceed to discovery, after which Defendants may raise these issues again based on a full record.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' Objections (Dkt. No. 18) are **REJECTED**; and it is further

**ORDERED** that Magistrate Judge Treece's Report-Recommendation (Dkt. No. 17) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 14) is **DENIED;** and it is further

**ORDERED** that Defendants file an answer to the Plaintiff's Complaint within 14 days of the date of this Memorandum-Decision & Order pursuant to Fed.R.Civ.P. Rule 12(a)(4)(a) and this case is referred back to Magistrate Judge Treece for the setting of pretrial scheduling deadlines.

Dated: March 11, 2013
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge