**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

TIMOTHY A. VAIL,

                      Plaintiff,

     - v -                                   Civ. No. 9:12-CV-00234
                                                         (GTS/RFT)

JOSEPH SMITH, *Superintendent, Shawangunk Correctional Facility*; LOUIS PINGOTTI, *Captain, Shawangunk Correctional Facility*; MAUREEN BOLL, *Deputy Commissioner and Counsel, Department of Corrections and Community Supervision*, PETER PRESTON, *Sergeant, Shawangunk Correctional Facility*,

                      Defendants.

| APPEARANCES: | OF COUNSEL: |
|---|---|
| TIMOTHY A. VAIL<br>*Pro se* Plaintiff<br>#89-C-1513<br>Shawangunk Correctional Facility<br>P.O. Box 700<br>Wallkill, NY 12589 | |
| HON. ERIC T. SCHNEIDERMAN<br>Attorney General of the State of New York<br>Attorney for Defendants<br>The Capitol<br>Albany, NY 12224 | ADELE TAYLOR SCOTT, ESQ.<br>Assistant Attorney General |

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

On January 25, 2012,[1] *pro se* Plaintiff Timothy Vail, while incarcerated at Shawangunk Correctional Facility, a maximum security facility, commenced this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that its prison policy restricting the number of envelopes that a prisoner may possess at any one time infringes upon his First Amendment right to free flow of outgoing mail. *See* Dkt. No. 1, Compl. On April 10, 2014, Defendants moved for summary judgment. Dkt. No. 50. Plaintiff subsequently filed his Response in Opposition. Dkt. No. 57.

## I. DISCUSSION

### A. Suggestion of Death

As a preliminary matter, the Court recommends dismissing deceased Defendant Peter Preston from this action. Federal Rule of Civil Procedure 25(a)(1) provides that if a party dies and the claim is not extinguished by the party's death, substitution of the proper party may occur. *Withrow v. Taylor*, 2007 WL 3274858, at *2 (N.D.N.Y. Nov. 5, 2007) (citing to FED. R. CIV. P. 25(a)(1)). "A motion for substitution may be made by any party, and the motion must be served on the parties as provided in Rule

---

[1] The Second Circuit has held that due to the unique difficulties faced by incarcerated *pro se* litigants, a prisoner's pleading is deemed to be properly filed at the time he or she hands the papers to the prison authorities for transmittal to the court. *Dory v. Ryan*, 999 F.2d 679, 681-82 (2d Cir. 1993), *modified on reh'g*, 25 F.3d 81 (2d Cir. 1994). It is presumed that a prisoner handed the pleading to the prison guard on the date he signed the complaint. *Shaw v. Superintendent Attica Corr. Fac.*, 2007 WL 951459, at *3 n.3 (N.D.N.Y. Mar. 28, 2007).

5 [of the Federal Rules of Civil Procedure] and served upon non-parties as one would serve a summons pursuant to Rule 4." *Id.* (citing to FED. R. CIV. P. 25(a)(1)). If the motion for substitution is not made within ninety days after service of a statement noting the death, the action against the decedent must be dismissed. FED. R. CIV. P. 25(a)(1).

"The rule makes it clear that any party may make a motion for substitution, but as soon as a 'suggestion of death' is filed, the motion for substitution must be made within 90 days." *Withrow v. Taylor*, 2007 WL 3274858, at *2 (citing FED. R. CIV. P. 25(a)(1)). There are two affirmative steps required to sufficiently trigger the ninety-day time limitation: first, the death must be "formally" suggested "upon the record" and second, "the 'suggesting party' must serve other parties and non-party successors or representatives of the deceased with a suggestion of death in the same manner as required for service of the motion to substitute." *Id.* at *2-3 (citations omitted).

On April 4, 2014, Plaintiff and representatives of the deceased were served with the Suggestion of Death. Dkt. No. 50-4, Adele Taylor Scott Aff., Ex. A, Yvonne R. Ross, Decl. of Service, dated Apr. 4, 2014. On April 10, 2014, Defendants filed the Suggestion of Death with the Court. Taylor Scott Aff., Ex. A, Suggestion of Death, dated Apr. 9, 2014. More than ninety days have passed and neither Plaintiff nor any Defendant has moved for a motion of substitution. Thus, the Court recommends

dismissing Peter Preston from this action.

## B. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when

the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) & *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *accord Soto v. Walker*, 44 F.3d 169, 173

(2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991). Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### C. Material Facts

On May 19, 2010, Plaintiff was transferred to the Special Housing Unit (SHU) at the Shawangunk Correctional Facility. Compl. at 6(1); Taylor Scott Aff., Ex. B, Timothy A. Vail Dep., dated Dec. 10, 2013, at pp. 22-23. Shawangunk is a maximum security prison that is designed and operated to house high profile and/or long term inmates. Dkt. No. 50-2, Joseph T. Smith Decl., dated Apr. 4, 2014, at ¶ 6. Many of the inmates housed at Shawangunk have a propensity for disruptive behavior such as, violence, escape, and gang activity, or an inability or unwillingness to follow the Facility's rules. *Id.* Providing services to SHU inmates requires higher security precautions and more direct participation by security staff. *Id.* at ¶ 8. Shawangunk has a policy of allowing SHU inmates a maximum of five letter sized envelopes at any given time. *Id.* at ¶ 12. SHU inmates can request more envelopes on a one-to-one exchange: for every envelope an inmate places in the mail, he is entitled to another envelope, up to five envelopes per day. *Id.* In addition to receiving letter sized

envelopes, SHU inmates are provided with two 9 x12 manila envelopes, which may also be exchanged on a one-to-one basis; legal sized envelopes are also provided for specified legal work. *Id*. at ¶ 15. SHU inmates, like the Plaintiff, may also purchase manilla envelopes from the commissary. Dkt. No. 57-2, Pl.'s Mem. of Law, at pp. 4 & 7. There is no restriction on the amount of manilla envelopes that a SHU inmate may purchase. *Id.* at p. 7.

Defendant Joseph Smith has been the Superintendent of Shawangunk for over ten years. Smith Decl. at ¶ 1. According to Superintendent Smith, Shawangunk follows this policy for a number of reasons. For one, the policy eliminates waste as most inmates do not use all of the issued envelopes. *Id.* at ¶ 16. Two, it limits the potential for inmates to hoard items in SHU. *Id.* at ¶ 17. Hoarding hinders search procedures and can potentially attract vermin. *Id.* In the past, envelopes, have been used to feed fires, secrete contraband, block visibility into cells, and engage in the proscribed practice of kiting both within and off the unit. *Id.* And three, the policy controls the amount of outgoing mail, which in turn reduces the burdensome workload of staff who are assigned to monitor outgoing mail. *Id.* at ¶ 19.

Mail is picked up five days a week, allowing Plaintiff to mail out, at a minimum, twenty-five letters per week. Vail Dep. at p. 34. On the days mail is picked up, Plaintiff typically mails out five or more letters. *Id.* However, on some

days, he does not use all of the allotted envelopes. *Id.* at p. 42.

In response to inmate grievances on the matter, in January 2011, the Central Office Review Committee decided that inmates could receive extra letter sized envelopes if they could demonstrate a need for the request. Dkt. No. 50-3, Louis Pingotti, Decl., dated Apr. 4, 2014, Ex. B. SHU staff was notified that "[i]f an inmate expresses a need for more than five envelopes per day and can justify a legitimate need for the same, his request for the additional envelopes should be granted." Pingotti Decl., Ex. A, Mem., dated Jan. 11, 2011. However, staff found the revised policy "impossible" to implement because the inmates could not articulate a legitimate need for the extra envelopes; as a result, they freely provided inmates with extra envelopes upon request. Pingotti Decl. at ¶ 10. This led to various areas of the facility running out of envelopes, which caused disruptions in the mailing distribution process and interfered with the orderly operation of the Facility. *Id.* at ¶ 11. As a result, Defendant Louis Pingotti, who at the time was a Captain at Shawangunk, directed staff to adhere to the original policy. *Id.* at ¶ 12.

Maureen Boll is Counsel and Deputy Commissioner of DOCCS. Compl. at ¶ 3. Plaintiff sent two letters, dated October 12, 2010 and September 12, 2011, to Defendant Boll complaining about his inability to secure more than five envelopes at a time from the Facility. *See* Compl. at ¶ 6(11). Defendant Boll did not respond to

any of Plaintiff's letters. Vail Dep. at pp. 53-54 & 86-87.

### D. Personal Involvement

The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted). Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement." *Kinch v. Artuz*, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d at 874 & *Wright v. Smith*, 21 F.3d at 501) (further citations omitted). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

The Second Circuit has stated that a supervisory defendant may have been personally involved in a constitutional deprivation within the meaning of § 1983 if he: (1) directly participated in the alleged infraction; (2) after learning of the violation, failed to remedy the wrong; (3) created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue; (4) was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d at 873 (citations omitted); *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986) (citations omitted).

Here, the Court cannot, as a matter of law, find that Defendant Boll was personally involved in any wrongdoing for simply receiving two complaint letters from the Plaintiff. *Smart v. Goord*, 441 F. Supp. 2d 631, 643 (S.D.N.Y. 2006) (refusing to hold the DOCCS Commissioner liable on the sole basis that he did not act in response to letters of protest sent by the plaintiff)*, reconsidered on other grounds*, 2008 WL 591230 (S.D.N.Y. Mar. 3, 2008). Thus, the Court recommends dismissing Defendant Boll from this action.

### E. First Amendment

It is clear that a prisoner's First Amendment rights are implicated when the "free flow of incoming and outgoing mail" is hindered. *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). However, the right to the free flow of mail does not provide for the unfettered free flow of mail. Reasonable restrictions on the free flow of mail are allowed, provided the restrictions "further one or more of the substantial governmental interests of security, order, and rehabilitation . . . and must be no greater than is necessary or essential to the protection of the particular governmental interest involved." *Id*. (quoting *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986)). The Supreme Court has enumerated various factors for courts to consider when ruling

upon the reasonableness of a prison policy which allegedly impedes or interferes with a prisoner's constitutional rights:

> [1] there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it [citation omitted][;] . . . [2] whether there are alternative means of exercising the right that remain open to prison inmates[;] . . . [3] the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally [; and] . . . [4] the absence of ready alternatives is evidence of the reasonableness of a prison regulation.

*Turner v. Safley*, 482 U.S. 78, 89-91 (1987).

Here, Plaintiff does not contend that the policy denied his ability to access the courts. Vail Dep. at p. 39. Rather, the Plaintiff is challenging the reasonableness of the policy. *See generally id.* at pp. 34-36. In light of the factors announced in *Turner*, the Court finds Shawangunk's policy to be rationally related to the legitimate penological concerns of the Facility's administrators. Shawangunk is a maximum security prison and has implemented the policy to address a number of concerns relating to safety, order, and management. Moreover, when the policy was temporally lifted it led to a disruption in the mailing distribution process and, in turn, interfered with the orderly operation of the Facility. Pingotti Decl. at ¶¶ 11-12. Secondly, Shawangunk inmates have "other avenues" for sending out time sensitive mail as the prisoners can prioritize their correspondence. *Turner v. Safley*, 482 U.S. at 90; *Davidson v. Mann*, 129 F.3d 700, 702 (2d Cir. 1997) (prioritizing outgoing mail is a

viable alternative). Thirdly, prison staff had a difficult time implementing the revised policy as prisoners could not verbalize a legitimate need for the extra envelopes. As a result, staffers attempted to accommodate the prisoners by issuing extra envelopes upon request, which led to a disruption in the mailing distribution process. In addition, the courts are cautioned to be particularly deferential to the informed discretion of corrections officials "[w]hen accommodation of an asserted right will have significant 'ripple effect' on fellow inmates or on prison staff." *Turner v. Safley*, 482 U.S. at 90. Lastly, the Plaintiff contends that the Facility can simply sell "regular sized envelopes" to inmates. Pl.'s Mem. of Law, at p. 7. Defendants do not articulate the cost or burden the Facility would suffer if Plaintiff's suggested alternative were implemented. *Overton v. Bazzeta*, 539 U.S. 126, 136 (2003) (explaining that the last *Turner* inquiry is a high standard, which asks "whether the prisoner has pointed to some obvious [] alternative . . . while not imposing more than a *de minimis* cost to the valid penological goal"). Regardless, "prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating [a] claimant's constitutional complaint." *Turner v. Safley*, 481 U.S. at 90-91. On this record, the policy does not unconstitutionally abridge Plaintiff's First Amendment rights. Thus, the Court recommends **granting** Defendants' Motion for Summary Judgment in its entirety.

## II. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, Defendant Preston be **DISMISSED** from this action pursuant to Federal Rule of Civil Procedure 25; and it is further

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 50) be **GRANTED** in its entirety and the case be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: January 20, 2015
       Albany, New York

Randolph F. Treece
U.S. Magistrate Judge